UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LESLIE JAMES PICKERING, and
GEOFF KELLY, Artvoice,                                          AMENDED
                                                                              REPORT
                                        Plaintiffs,                   and
                        v.                                              RECOMMENDATION

U.S. DEPARTMENT OF JUSTICE,
UNITED STATES POSTAL SERVICE, and
TRANSPORTATION SECURITY ADMINISTRATION,              13-CV-00674A(F)

                                        Defendants.
_____

APPEARANCES:              MICHAEL KUZMA, ESQ.
                                  Attorney for Plaintiffs
                                  1893 Clinton Street
                                  Buffalo, New York  14206

                                  DAIRE BRIAN IRWIN, ESQ.
                                  Attorney for Plaintiffs
                                  210 Voorhees Avenue
                                  Buffalo, New York  14214

                                  WILLIAM J. HOCHUL, JR.
                                  UNITED STATES ATTORNEY
                                  Attorney for Defendants
                                  MICHAEL S. CERRONE
                                  Assistant United States Attorney, of Counsel
                                  Federal Centre
                                  138 Delaware Avenue
                                  Buffalo, New York  14202

## <u>JURISDICTION</u>

This case was referred to the undersigned by Hon. Richard J. Arcara on August

13, 2013, for all pretrial matters including preparation of a report and recommendation

on dispositive motions.  The matter is presently before the court on Defendants' motion

for summary judgment (Doc. No. 19), filed November 20, 2013, and Plaintiff's cross-motion for summary judgment (Doc. No. 29), filed January 15, 2014.

## **BACKGROUND**

Plaintiffs commenced this action pursuant to the Freedom of Information Act, 5 U.S.C. § 552, seeking an injunction and other relief, as well as the disclosure and release of agency records pertaining to Leslie James Pickering ("Pickering"), which Pickering maintains were improperly withheld from Pickering and Plaintiff Geoff Kelly ("Kelly") (together, "Plaintiffs"), by Defendants Federal Bureau of Investigation ("FBI"), United States Postal Service ("USPS"), U.S. Department of Justice ("DOJ"), and the Transportation Security Administration ("TSA") (together, "Defendants").  The Complaint asserts a separate claim for relief against each Defendant, *i.e.*, FBI ("First Claim"); USPS ("Second Claim"), DOJ ("Third Claim"), and TSA ("Fourth Claim"). Defendants' answer was filed August 12, 2013 (Doc. No. 7).

On November 20, 2013, Defendants filed a motion for summary judgment (Doc. No. 19) ("Defendants' Motion"), supported by their Memorandum of Law (Doc. No. 20) ("Defendants' Memorandum"), Statement of Undisputed Facts (Doc. No. 21) ("Defendants' Statement of Facts"), the Declaration of Betty L. White (Doc. No. 22) ("White Declaration"), attaching exhibits A through Q (Docs. Nos. 22-1 through 22-3) ("White Dec. Exh(s). __"), the Declaration of David Luczynski (Doc. No. 23) ("Luczynski Declaration"), attaching exhibits A through F ("Luczynski Dec. Exh(s). __"), the Declaration of David M. Hardy (Doc. No. 24) ("Hardy Declaration"), attaching exhibits A through H ("Hardy Dec. Exh(s). __"), and the Declaration of Aeron J. Pineiro (Doc. No.

25) ("Pineiro Declaration"), attaching exhibits A through E ("Pineiro Dec. Exh(s). __").

According to a Scheduling Order filed November 25, 2013 (Doc. No. 27), because

Plaintiffs had indicated that fact discovery was unlikely, and given that Defendants had

filed a dispositive motion, the court did not include any outside dates for discovery.

On January 15, 2014, Plaintiffs filed their cross-motion for summary judgment

(Doc. No. 29) ("Plaintiffs' Motion"), supported by Plaintiffs' Statement of Material,

Undisputed Facts Pursuant to Local Rule 56.1 (Doc. No. 29-1) ("Plaintiff's Statement of

Facts"), Plaintiffs' Memorandum of Law in Support of Motion for Summary Judgment

(Doc. No. 29-2) ("Plaintiffs' Memorandum"), the Affidavit of Leslie James Pickering (Doc.

No. 29-3) ("Pickering Affidavit"), and exhibits A and B (Doc. No. 30) ("Plaintiffs' Exh(s).

__").

In further support of Defendants' Motion, Defendants filed on April 30, 2014, their

Reply Memorandum of Law (Doc. No. 36) ("Defendants' Reply"), attaching Exhibit A

("Defendants' Reply Exh. A").  In opposition to Plaintiff's Motion, Defendants filed on

April 30, 2014, a separate Memorandum of Law by USPS (Doc. No. 37) ("USPS's

Response"), and TSA (Doc. No. 38) ("TSA's Response"), attaching exhibits A through C

(Docs. Nos. 38-1 through 38-4) ("TSA's Exh(s). __"), Defendants' Response to

Statement of Undisputed Facts (Doc. No. 39) ("Defendants' Statement of Facts

Response"), the Declaration of Betty L. White (Doc. No. 40) ("White Reply Declaration"),

attaching exhibit A ("White Reply Exh. A"); the Supplemental Declaration of David M.

Hardy (Doc. No. 41) ("Hardy Reply Declaration"), and the Declaration of Douglas E.

Blair (Doc. No. 42) ("Blair Reply Declaration").

In further support of summary judgment, Plaintiffs filed on May 23, 2014, their Reply Memorandum of Law (Doc. No. 44) ("Plaintiffs' Reply").  Oral argument was deemed unnecessary.

Based on the following, Defendants' Motion should be GRANTED; Plaintiffs' Motion should be DENIED.

## FACTS[1]

Plaintiff Leslie James Pickering ("Pickering"), owner of Burning Books, a local independent book store that regularly screens films and hosts speakers considered by some as politically radical, worked in the independent press office covering activities of the Earth Liberation Front ("ELF"), from 1997 through 2002.  Pickering maintains his political activism has led to a number of encounters with federal agents, believing he has been targeting by the FBI and other federal agencies because of his association with Burning Books and ELF.  Plaintiffs' claims pertain to four FOIA requests made to the FBI,[2] USPS, EOUSA, and TSA, and the facts are separately discussed as to the claim against each Defendant.

## 1.   USPS

In September 2012, Pickering discovered in his residential mail box a handwritten note indicating the placement of a "mail cover" between August 16 and September 14, 2012.  The placement of a mail cover alerted the USPS that all first-class letters and parcels sent to Plaintiff's residential address were to be held and the outsides copied prior to their delivery, so as to permit federal investigators to track who

---

[1] Taken from the pleadings and motion papers filed in this action.
[2] Because, as discussed, Discussion, *infra*, at 16, Plaintiffs have abandoned their First Claim against the FBI, the facts pertaining to such claim are not presented.

is corresponding through the USPS with the subject of an investigation.  The discovery

of the note prompted Pickering to send a request pursuant to FOIA seeking all records

on file pertaining to Pickering.  Plaintiff Geoff Kelly ("Kelly"), owner of the local

independent newspaper Artvoice, agreed to make the FOIA request on Pickering's

behalf.

Accordingly, on September 21, 2012, Kelly submitted to the USPS a FOIA

request ("USPS FOIA request"), seeking, *inter alia*, documents pertaining to any mail

cover on Pickering.  The USPS FOIA request, which was received by the USPS's

Inspection Service ("USPIS"), on September 25, 2012, was accompanied by a

Certificate of Identity form ("COI") on which the portion authorizing the release of

Pickering's information to a third party was incomplete.

By letter dated October 1, 2012, the USPIS responded to the USPS FOIA

request, requesting a copy of Pickering's identification.  In response, Kelly, on October

25, 2012, sent by facsimile a photocopy of Pickering's New York State Driver's License,

although USPIS has no record of receiving the facsimile, but does admit receiving on

October 19, 2012, an e-mail attaching a scan of Pickering's identification.  Also on

October 25, 2012, USPIS sent Kelly a letter advising that because Kelly sought

information pertaining to Pickering, a written statement from Pickering authorizing USPS

to release records to Kelly was required.  Kelly maintains that, by letter dated November

15, 2012, he resubmitted the COI form to USPIS, which denies receiving it.  On January

23, 2013, Kelly sent a letter to Chief Counsel, FOIA/Privacy and Government Relations,

USPS, thereby filing an administrative appeal based on the USPS's failure to timely

respond to the USPS FOIA request ("USPS appeal").

On April 10, 2013, the USPS's Office of General Counsel received Kelly's re-submitted USPS appeal, dated April 1, 2013.  By letter to Kelly dated April 11, 2013, Chris Klepac ("Klepac"), Chief Counsel, Federal Requirements, advised the USPS had no record of any previously submitted administrative appeal and was in the process of reviewing the USPS appeal.  USPIS maintains the copy of the properly executed COI form Kelly allegedly resubmitted on November 15, 2012, was received by USPIS on April 18, 2013, when it was forwarded by the Postal Service, Federal Requirements.  As such, Defendants maintain that prior to April 18, 2013, USPS was not in possession of any authorization permitted the release of any documents to Kelly.  By letter to Kelly dated April 19, 2013, Klepac advised the USPS FOIA request was being remanded to USPIS for further action and response.  By letter to Kelly dated April 30, 2012, USPIS produced in response to the USPS FOIA request 26 pages of records, some with the names of third parties appearing on the outside of correspondence redacted.

By letter dated May 24, 2013, Kelly filed an administrative appeal of the records produced by the USPS in response to the USPS FOIA request ("USPS appeal"), asserting that "an indeterminate number of pages were withheld in their entirety."  White Declaration ¶ 25 and Exh. L.  Although dated May 24, 2013, however, the USPS appeal was not mailed until June 10, 2013, and not received by the USPS Office of General Counsel ("USPS OGC"), until June 14, 2013, and further not received by Chief Counsel, Federal Requirements until June 18, 2013.

After the instant action was commenced on June 26, 2013, Klepac, by letter to Kelly dated July 17, 2013, responded to the USPS appeal, upholding the redaction of names of third-parties on the outside of the produced correspondence photocopies, but

remanding the matter to the USPIS for clarification as to whether additional records responsive to the USPS FOIA request existed.  The USPIS then conducted an analysis to determine whether there were any additional records responsive to the USPS FOIA request, advising Kelly of such effort by letter dated August 9, 2013.  On August 27, 2013, USPIS notified Kelly that an additional 33 pages of records had been located, 19 of which were provided with redactions, but withheld the remaining 14 pages as exempted from disclosure under FOIA.

By e-mail dated March 27, 2014, USPS referred to FBI Headquarters ("FBIHQ"), for review and consultation six documents consisting of the 14 pages withheld by the USPS as exempt from disclosure.  In e-mails dated March 31 and April 16, 2014, the FBI responded by asking USPS to continue to withhold the documents from disclosure pursuant to FOIA Exemptions 7(E) and 7(C).  As such, the 14 pages have not been released to Plaintiffs.

## 2.   EOUSA

By letter dated February 27, 2013, Plaintiffs' attorney, Michael Kuzma ("Kuzma"), submitted a FOIA request to the Executive Office for United States Attorney ("EOUSA"), seeking documents pertaining to Pickering ("EOUSA FOIA request").  The EOUSA FOIA request was accompanied by a COI for which the portion authorizing the release of Pickering's information to a third party was not completed.

By letter dated April 8, 2013, EOUSA acknowledged receipt of the EOUSA  FOIA request, advising EOUSA would not process a request for records pertaining to a third party absent (1) a privacy waiver from the third party granting the requester access to his records; (2) proof of death of the third party; or (3) demonstration of a public interest

overriding the third party's interest.  EOUSA thus denied the EOUSA FOIA request,

advising Kuzma had 60 days to appeal the denial to the DOJ's Office of Information

Policy ("DOJ OIP").  Kuzma appealed the EOUSA's denial by letter dated April 11, 2013

("EOUSA appeal").  DOJ OIP acknowledged receipt of the EOUSA appeal by letter to

Kuzma dated April 26, 2013.  Plaintiff's commencement of the instant action on June

26, 2013, however, caused DOJ OIP to close its file pertaining to the EOUSA appeal,

notifying Kuzma of such action by letter dated July 11, 2013.

**3.     TSA**

On March 2, 2013, Pickering, his wife, and young daughter were scheduled for a

United Airlines flight from the Buffalo-Niagara International Airport ("BUF") to San

Francisco International Airport ("SFO").  Although Pickering and his family encountered

no difficulties passing through BUF's initial security checkpoint, when Pickering, whose

boarding pass did not contain a Secondary Security Screening Selection ("SSSS")

designation, presented the boarding pass for screening prior to boarding the flight, the

computer indicated Plaintiff had been selected for further searching.  Plaintiff maintains

he was "thoroughly frisked," and his carry-on luggage, as well as that of his wife and

daughter, were searched.  Pickering Affidavit ¶ 11.  Plaintiff was then issued a new

boarding pass bearing the "SSSS" designation.  Upon his return flight from San

Francisco, Plaintiff's boarding pass again bore the "SSSS" designation, such that

Plaintiff was subjected to more intense screening at SFO, including being frisked by a

TSA employee, compelled to pass through the Rapiscan full-body scanner, and

subjected to Explosives Trace Detection ("ETD") tests, while his clothing, shoes, and

carry-on luggage were swiped with chemical swabs.

By letter to the Transportation Security Administration ("TSA") dated March 29, 2013, Kuzma made a FOIA request seeking documents pertaining to Pickering ("TSA FOIA request").  The TSA FOIA request was accompanied by an Immigration and Customs Enforcement ("ICE") Form 60-001 ("ICE Form"), entitled "Privacy Waiver Authorizing Disclosure to a Third Party," on which the portion authorizing the disclosure of Pickering's information to Kuzma was completed, but the form was not signed by a witness as required in the instructions.  The TSA FOIA Branch received the TSA FOIA request on April 9, 2013, opening case number TSA13-0548, and sending Kuzma an acknowledgement letter on April 10, 2013.

Finding the TSA FOIA request to be vague and broad, TSA called Kuzma on April 22, 2013, seeking clarification as to the request's scope, and Kuzma stated he sought only information pertaining to the searches of Pickering at BUF and SFO.  The next day, TSA assigned the Federal Security Directors ("FSD") at BUF and SFO to conduct a search for information responsive to the TSA FOIA request.  On April 25, 2013, BUF FSD provided 11 pages of responsive documents to TSA, indicating the documents were exempt from disclosure as they contained sensitive security information ("SSI").  The BUF FSD supervisor certified that BUF employees spent 1.5 hours searching all relevant TSA databases for responsive records.  On April 29, 2013, SFO FSD indicated to TSA there were no documents responsive to the TSA FOIA request.  The SFO FSD supervisor certified that SFO employees spent 3 hours searching all relevant TSA databases for responsive records.  On May 1, 2013, TSA submitted the 11 pages received from BUF to the TSA SSI review office for

identification and redaction of SSI.  Following the SSI Office's review, TSA redacted

from the 11 pages information exempt from disclosure as SSI under FOIA.

According to Defendants, on May 21, 2013, Pickering submitted to the

Department of Homeland Security ("DHS"), a letter constituting an administrative appeal

regarding TSA's inaction on the TSA FOIA request ("TSA appeal").  The TSA appeal

was received in DHS headquarters on May 22, 2013, but DHS did not forward the

appeal to TSA nor notified TSA of its receipt.   In Plaintiffs' action, filed on June 26,

2013, Plaintiffs assert that although more than 20 days had elapsed since the filing of

their administrative appeal, TSA had failed to notify Pickering as to whether it would fully

comply with his request, and Pickering had fully exhausted administrative remedies

relative to the TSA FOIA request, such that Pickering was entitled to prompt access to

all records requested in the TSA FOIA request.

By letter dated August 30, 2013, TSA notified Kuzma the TSA FOIA Branch was

ready, willing, and able to respond to the TSA FOIA request upon receipt of proper

authorization from Pickering to disclose the requested information to Kuzma.  Because

the ICE form Kuzma originally submitted with the TSA FOIA request was invalid

because it was not a TSA form, the proper form – a TSA FOIA Branch Disclosure

Authorization Form ("TSA FOIA Authorization form") – was enclosed with the letter.  On

September 24, 2013, TSA received from Kuzma the TSA FOIA Authorization form

executed by Pickering.  That same day, TSA counsel provided Kuzma with TSA's final

response to the TSA FOIA request and the 11 redacted pages of responsive documents

found by BUF FSD.

**DISCUSSION**

**1.     Summary Judgment**

Summary judgment of a claim or defense will be granted when a moving party

demonstrates that there are no genuine issues as to any material fact and that a moving

party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) and (b); *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 250-51 (1986); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir.

2003).  The court is required to construe the evidence in the light most favorable to the

non-moving party.  *Collazo v. Pagano*, 656 F.3d 131, 134 (2d Cir. 2011).  The party

moving for summary judgment bears the burden of establishing the nonexistence of any

genuine issue of material fact and if there is any evidence in the record based upon any

source from which a reasonable inference in the non-moving party's favor may be

drawn, a moving party cannot obtain a summary judgment.  *Celotex*, 477 U.S. at 322;

*see Anderson*, 477 U.S. at 247-48 ("summary judgment will not lie if the dispute about a

material fact is genuine, that is, if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party").  "A fact is material if it 'might affect the

outcome of the suit under governing law.'"  *Roe v. City of Waterbury*, 542 F.3d 31, 35

(2d Cir. 2008) (quoting *Anderson*, 477 U.S. at 248).

"[T]he evidentiary burdens that the respective parties will bear at trial guide

district courts in their determination of summary judgment motions."  *Brady v. Town of*

*Colchester*, 863 F.2d 205, 211 (2d Cir. 1988)).  A defendant is entitled to summary

judgment where "'the plaintiff has failed to come forth with evidence sufficient to permit

a reasonable juror to return a verdict in his or her favor on'" an essential element of a

claim on which the plaintiff bears the burden of proof.  *In re Omnicom Group, Inc., Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010) (quoting *Burke v. Jacoby*, 981 F.2d 1372, 1379 (2d Cir. 1992)).  Once a party moving for summary judgment has made a properly supported showing of the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor.  *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995).   "[F]actual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial."  *Hayes v. New York City Dept. of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996).

        In the instant case, Plaintiffs and Defendants have moved for summary judgment.  Defendants seek summary judgment dismissing the action as to the FBI FOIA request, the EOUSA FOIA request, and the USPS FOIA request based on Plaintiff's failure to exhaust administrative remedies, Defendants' Memorandum at 3-6, and as to the TSA FOIA request on the grounds of mootness, *id.* at 6-8.  In opposition to Defendants' Motion, and in support of Plaintiffs' Motion, Plaintiffs abandon their claim against the FBI, Plaintiffs' Memorandum at 1 n. 1, but argue EOUSA improperly failed to process the EOUSA FOIA request, *id.* at 2-3, the purposes underlying exhaustion have been served with respect to the USPS FOIA request, *id.* at 3-4, TSA's search for records responsive to the TSA FOIA request was inadequate, *id.* at 4-5, TSA has failed to sustain its exemption claim, *id.* at 5-6, the non-exempt portions of documents responsive to the USPS FOIA request must be released, *id.* at 6, and Defendants have wrongly relied on FOIA exemptions to shield documents from release, *id.* at 6-10.   In

further support of summary judgment, Defendants acknowledge Plaintiffs have

abandoned their claim against the FBI, Defendants' Reply at 1, and argue Plaintiffs'

claims against TSA have been rendered moot by TSA's provision of 11 documents

responsive to the TSA FOIA request, id. at 2-4; and reiterate their argument that

Plaintiffs have failed to exhaust their administrative remedies with regard to the USPS

and EOUSA FOIA requests, id. at 4-7.   In separate memoranda submitted in opposition

to Plaintiffs' Motion, USPS and TSA address Plaintiffs' arguments regarding the

withholding and redaction of information otherwise responsive to the respective FOIA

requests as exempt from disclosure under applicable law, USPS's Response at 1-8;

TSA Response at 10-24.  TSA also defends the adequacy of its records search.  TSA's

Response at 2-10.  In further support of summary judgment, Plaintiffs argue they have

exhausted administrative remedies as to the EOUSA FOIA request, Plaintiffs' Reply at

1; their claim against TSA is not moot because Plaintiff's were not required to file an

administrative appeal of the TSA FOIA request and TSA's records search was

inadequate, id. at 3-5, and USPS has wrongly withheld information based on FOIA

exemptions, id. at 5-7.[3]

## 2.    FOIA Overview

"The Freedom of Information Act adopts as its most basic premise a policy

strongly favoring public disclosure of information in the possession of federal agencies."

Halpern v. F.B.I., 181 F.3d 279, 286 (2d Cir. 1999) (citing cases).  "The FOIA requires

that agency records be made available promptly upon a request that 'reasonably

---

[3] Because the undersigned recommends that summary judgment be granted in favor of Defendants on all claims based on Plaintiffs' failure to properly follow applicable administrative procedures, the alternative arguments relying on substantive FOIA law are not addressed in the interests of clarity and judicial economy.

describes such records and . . . is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed.'" *Ruotolo v. Department of Justice, Tax Division*, 53 F.3d 4, 9 (2d Cir. 1995) (quoting 5 U.S.C. § 552(a)(3)).  FOIA, however, exempts from disclosure nine categories of information.  5 U.S.C. § 552(b)(1) through (9).  "Accordingly, to prevail on a summary judgment motion in a FOIA case, an agency must demonstrate 'that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements.'" *Ruotolo*, 53 F.3d at 9 (quoting *Nat'l Cable Television Ass'n Inc. v. FCC*, 479 F.2d 183, 186 (D.D.Cir. 1973)).  Furthermore, "'to prevail on a motion for summary judgment in a FOIA case, the defending agency has the burden of showing that its search was adequate.'" *Id.* (quoting *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d Cir.), *cert. denied*, 513 U.S. 823 (1994)).

In the context of an action brought under FOIA, "[e]xhaustion of administrative remedies is generally required before filing suit in federal court so that the agency has an opportunity to exercise its discretion and expertise on the matter and to make a factual record to support its decision.  *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 61 (D.C.Cir. 1990) (citing *McKart v. United States*, 395 U.S. 185, 194 (1969)).  The purpose of FOIA's exhaustion scheme is to allow an agency from which information has been requested to correct any mistakes in responding to a FOIA request, thereby obviating unnecessary judicial review.  *Id.*  Congress "did not mean for the court to take over the agency's decisionmaking role in midstream or to interrupt the agency's appeal process when the agency has already invested time, resources, and expertise into the effort of responding," and permitting a FOIA requester to proceed to court prior to

exhausting administrative remedies "would cut off the agency's power to correct or rethink initial misjudgments or errors." *Oglesby*, 920 F.2d at 64.

Although "absent a statutory provision to the contrary, failure to exhaust is by no means an automatic bar to judicial review; courts usually look at the purposes of exhaustion and the particular administrative scheme in deciding whether they will hear a case or return it to the agency for further processing," *id*, both the "'purposes of exhaustion'" and the "'particular administrative scheme'" support barring the commencement of an action pursuant to FOIA until the administrative appeals process has been exhausted. *Hidalgo v. FBI*, 344 F.3d 1256, 1259 (D.C.Cir. 2003) (citing and quoting *Oglesby*, 920 F.2d at 61). FOIA's statutory scheme provides for an administrative appeal process following an agency's denial, in whole or in part, of a FOIA request. In particular, upon receiving a FOIA request, an agency has ten "working days," *i.e.*, excepting Saturdays, Sundays, and legal public holidays, to decide whether to comply with the request and to notify the requesting party of such decision, the reason for the decision, and the right of the requesting party to appeal any adverse agency determination to the head of the requested agency. 5 U.S.C. § 552(a)(6)(A)(i) & (ii). The requested agency must make a determination as to any appeal within 20 working days after the appeal's receipt, and if the denial is upheld on appeal, the agency must notify the requesting party of the provisions for judicial review under 5 U.S.C. § 552(a)(4)(B). 5 U.S.C. § 552(a)(6)(A)(ii). Further, "[c]ourts have consistently confirmed that the FOIA requires exhaustion of this appeal process before an individual may seek relief in the courts." *Oglesby*, 920 F.2d 57, 61-62 (citing cases). FOIA also provides for the "constructive" exhaustion of administrative remedies when the agency

fails to comply within applicable statutory time limits to a FOIA request, *i.e.*, within 10 days of receipt of a FOIA request, or within 20 days of receipt of an appeal of an adverse response to a FOIA request.  *Id.* at 62 (citing 5 U.S.C. § 552(a)(6)(B)).[4] Specifically, if the agency fails to respond to either an initial FOIA request or to an administrative appeal within the applicable time period, the requester may commence an action.  5 U.S.C. § 552(a)(6)(C).

### 3.      FBI FOIA Request

As stated, Discussion, *supra*, at 12-13, Plaintiffs have abandoned their claim against the FBI, Plaintiffs' Memorandum at 1 n. 1, and Defendants have acknowledged the abandonment.  Defendants' Reply at 1.  Accordingly, summary judgment should be GRANTED in favor of Defendants with regard to Plaintiffs' claim against the FBI.

### 4.      USPS FOIA Request

Defendants argue in support of summary judgment on Plaintiffs' Second Claim against the USPS that Plaintiffs' commencement of this action on June 26, 2013, was more than two weeks before the time Plaintiffs could have been deemed to have constructively exhausted their administrative remedies, such that the action is premature.  Defendants' Memorandum at 6.  Defendants further maintain that since Plaintiffs' commencement of this action, the USPS has located other records responsive to the USPS FOIA request that have either been provided to Plaintiffs, or withheld pursuant to a FOIA exemption, such that the instant action should be dismissed to permit Plaintiffs to administratively appeal such decision, thereby allowing the parties to

---

[4] The court notes that FOIA also provides for ten-day extensions for such replies under certain circumstances.  *See* 5 U.S.C. § 552(a)(6)(B) (permitting the agency to grant itself one ten-day extension for either the initial response to a FOIA request or to an administrative appeal).  No such extension is at issue in the instant case and the parties do not assert otherwise.

more fully develop the administrative record prior to judicial construction of Plaintiffs' claims.  *Id.*

In opposition to Defendants' motion, and in support of Plaintiffs' motion with regard to the Second Claim against USPS, Plaintiffs concede this action was filed prior to the exhaustion of their administrative remedies, yet argue that because USPS has since made a determination on Plaintiffs' administrative appeal, the purposes underlying the exhaustion doctrine have been satisfied and requiring Plaintiffs to submit to further administrative appeal would be futile.  Plaintiffs' Memorandum at 3-4.  Plaintiffs maintain that because the August 27, 2013 letter from the USPS to Kelly did not advise of the right to administratively appeal or to seek judicial review, constructive exhaustion may be found.  *Id.* at 4.  Plaintiffs further maintain that the non-exempt portions of the documents withheld by USPS must be released, *id.* at 6, USPS abused its power by turning over to the FBI for review the additional 14 pages of information found, *id.* at 8, and USPS has failed to sustain its burden with regard to the withholding of documents pursuant to FOIA exemptions b(5), *id.* at 8-9, and b(6) and (7), *id.* at 9-10, as well as b(7)(E), *id.* at 10.

USPS requires an administrative appeal be filed with Chief Counsel, FOIA/Privacy and Government Relations, within 30 days of the receipt of the USPS response denying the FOIA request.  39 C.F.R. § 265.7(e)(1) and (2).  Upon receipt of an administrative appeal, the USPS General Counsel has 20 working days to issue a written decision on the appeal.  39 C.F.R. § 265.7(f)(1) and (2).

In the instant case, because Kelly did file an administrative appeal of the USPS's response to Kelly's USPS FOIA request on June 14, 2013, a  Friday, and allowing for

Saturdays, Sundays, and the July 4 Independence Day legal public holiday, means

USPS had until July 15, 2013, *i.e.*, 20 working days from receipt of the appeal on June

14, 2013, to respond to the appeal.  The commencement of the instant action on June

26, 2013, thus was 12 days premature and deprived USPS of the opportunity to

address the grievances raised by Kelly in the appeal.  Accordingly, allowing Plaintiffs to

pursue their claim in this action against the USPS would undermine the USPS's process

for resolving FOIA requests.  *See Sieverding v. United States Department of Justice*,

910 F.Supp.2d 149, 155 (D.D.C. 2012) (considering plaintiff's filing of FOIA action

against agency on same day she filed administrative appeal regarding same agency's

response to FOIA request an "abusive litigation practice" precluding judicial review of

such claim), *aff'd* 2013 WL 6801184 (D.C.Cir. Dec. 11, 2013).  In other words, "to

proceed on a claim where the agency has not had the opportunity to act would not only

undercut the exhaustion requirement but would also encourage circumvention of the

administrative process simply by filing a lawsuit."  *Antonelli v. Fed. Bureau of Prisons*,

569 F.Supp.2d 61, 65 (D.D.C. 2008).  Significantly, that USPS continued to search for

and released more documents to Kelly after the appeal was filed, including as late as

August 27, 2013, referring on March 27, 2014, 14 withheld pages to FBIHQ for further

review and consultation, following which the FBI responded by asking USPS to continue

to withhold the documents from disclosure pursuant to FOIA Exemptions 7(E) and 7(C),

only serves to underscore the necessity of exhausting the administrative process which

is intended to reduce and clarify any issues in subsequent litigation.  *See Oglesby*, 920

F.2d at 65 ("Congress intended that the administrative route be pursued to its end.  It

did not mean for the court to take over the agency's decisionmaking role in midstream

or to interrupt the agency's appeal process when the agency has already invested time, resources, and expertise into the effort of responding."). Nor do Plaintiffs reference any caselaw precluding summary judgment based on Plaintiffs' failure to exhaust administrative remedies because USPS continued to provide documents in response to Kelly's USPS FOIA request despite the premature commencement of this action, rather than closing their file, and the court's research reveals none. [5]

Furthermore, Plaintiffs' argument, Plaintiffs' Memorandum at 4, that the August 27, 2013 letter from White failed to advise Kelly of his right to appeal or to seek judicial review exempted Plaintiffs from exhausting administrative remedies is without any merit in light of the undisputed fact that the August 27, 2013 letter was written after Plaintiffs prematurely commenced the instant action. Again, Plaintiffs' reference no caselaw, and the court's research has found none, establishing an agency's failure to advise of a right to appeal after an appeal has been filed operates to excuse a requesting party from the need to exhaust administrative remedies prior to commencing an action.

Plaintiffs' premature commencement of this action on June 26, 2013, prior to exhausting administrative remedies, thus requires denial of the Second Claim against the USPS. *Sieverding*, 910 F.Supp.2d at 154-55 (granting summary judgment in favor of DOJ where plaintiff filed appeal of FOIA response and on the same day commenced action in district court challenging FOIA response). Summary judgment in favor of Defendants should be GRANTED as to the Second Claim.

---

[5] In any event, the court conceives of no reason why the fact that Plaintiffs benefitted by the continued receipt of documents responsive to the USPS FOIA request should require a different result.

5.      **EOUSA FOIA Request**

Defendants argue in support of summary judgment on Plaintiffs' Third Claim

against EOUSA that Plaintiffs never provided EOUSA with a properly completed COI

and, as such, failed to follow the agency's regulations requiring dismissal of the claim

for failure to exhaust administrative remedies.  Defendants' Memorandum at 5.  In

opposition to Defendants' Motion and in support of Plaintiffs' Motion, Plaintiff argue

EOUSA improperly failed to process the EOUSA FOIA request because the COI,

although considered "helpful" to the processing of a FOIA request, is not required but is

"optional."  Plaintiffs' Memorandum at 2-3.  In reply, Defendants argue that although the

language in the relevant DOJ regulation, 28 C.F.R. § 16.3(a) ("§ 16.3a"), refers to the

completion of the COI in "suggestive but not mandatory" language, the phrase indicating

completion of the COI "will help the processing of your request," has been construed as

requiring the completion of the COI.  Defendants' Reply at 6-7.  Plaintiffs assert in reply

they have exhausted their administrative remedies as to the EOUSA FOIA request.

Plaintiffs' Reply at 2.

As stated, Facts, *supra*, at 7-8, the EOUSA FOIA request was accompanied by a

COI for which the portion authorizing the release of Pickering's information to a third

party was not completed, prompting EOUSA to advise Kuzma that a request for records

pertaining to a third party would not be processed without, *inter alia* and as relevant

here, a privacy waiver from the third party granting the requester access to his records,

and EOUSA thus denied Kuzma's EOUSA FOIA request.  Plaintiffs' position on this

issue concerns the proper interpretation of the relevant DOJ regulation stating

> If you are making a request for records about another individual, either a written
> authorization signed by that individual permitting disclosure of those records to

you or proof that the individual is deceased (for example, a copy of a death certificate or an obituary) *will help with the processing of your request*.

28 C.F.R. § 16.3(a) (italics added).

According to Plaintiffs, the equivocal phrase "will help with the processing of your request" has been held as not mandating the written authorization the EOUSA required prior to processing the EOUSA FOIA request.  Plaintiffs' Memorandum at 2-3; Plaintiffs' Reply at 2.  In support of their interpretation of § 16.3(a), Plaintiffs rely, *id.*, on *Lewis v. Department of Justice*, 609 F.Supp.2d 80, 83 (D.D.C. 2009), where the court "decline[d] defendant's invitation to read more into the regulation than what is stated."  Insofar as Defendants rely, in opposition, on *Pusa v. FBI*, CV99-04603 (C.D.Cal. Aug. 5, 1999), an unpublished decision,[6] as establishing that a failure to comply with § 16.3(a) constitutes a failure exhaust FOIA's administrative remedies, Defendants' Reply at 6-7, Plaintiffs maintain that because FOIA's venue provision, 5 U.S.C. § 552(a)(4)(B), permits any FOIA action to be brought in the United States District Court for the District of Columbia, more than one-third of such actions are commenced there, such that "judges within the [D.C.] circuit have developed substantial expertise in FOIA law," and, "[c]onsequently, this court should accord greater weight to the *Lewis* decision."  Plaintiff's Reply at 2. The court, however, need not determine which interpretation of 28 C.F.R. § 16.3(a) is correct because Plaintiffs, by filing this action before EOUSA issued its determination on the EOUSA appeal, have failed to exhaust their administrative remedies regarding the EOUSA FOIA request such that the court is without jurisdiction over the request.

Significantly, "[w]hen the United States consents to suit, the terms of its waiver of sovereign immunity define the jurisdiction of the federal courts."  *Peck v. Central*

---

[6] A copy of the *Pusa* decision is attached as Exhibit A to Defendants' Reply.

*Intelligence Agency*, 787 F.Supp. 63, 64 (S.DN.Y. 1992) (citing *United States v. Mottaz*, 476 U.S. 834, 841 (1986)).  The extent of the United States' waiver of its sovereign immunity under FOIA can be determined by reference to the relevant agency's regulatory scheme regarding responding to FOIA requests.  *See Parker v. U.S. Dept. of Justice*, 2012 WL 864784, at * 9 (E.D.Cal. March 13, 2012) (considering the terms under which the United States has consented to be sued under FOIA as including the relevant agency's regulations).  As discussed in connection with Plaintiffs' USPS FOIA request, Discussion, *supra*, at 19, the Second Circuit has held that the commencement of a FOIA action prior to exhausting administrative remedies requires denial of the FOIA claim.  *Sieverding*, 910 F.Supp.2d at 154-55.  Moreover, Plaintiffs lose little with the denial of Plaintiffs' claims for failure to exhaust administrative remedies because nothing prevents Plaintiffs from refiling the same EOUSA FOIA request with the requested third-party consent.  *Peck*, 787 F.Supp. at 66 ("there is nothing in the statute that prevents plaintiff from refiling an identical request with the [agency] and thereby restarting the process." (citing *Spannaus v. U.S. Dept. of Justice*, 824 F.2d 52, 61 (D.C.Cir. 1987) ("so far as we can tell, nothing [in FOIA] prevents [the plaintiff] from requesting the same withheld documents decade after decade without ever bringing a timely suit to compel disclosure")).  As such, "there is no need to stretch the terms of Congress' [*sic*] waiver of sovereign immunity in order to protect [Plaintiffs'] rights or further the objectives of FOIA."  *Peck*, 787 F.Supp. at 66.

Summary judgment on Plaintiffs' Third Claim against EOUSA should be GRANTED in favor of Defendants and DENIED as to Plaintiffs.

6.    **TSA FOIA Request**

Defendants seek summary judgment on Plaintiff's TSA FOIA request on the ground of mootness, arguing that since this action was commenced, Defendant TSA has conducted a thorough search of its records and has responded to the TSA FOIA request by providing 11 pages of responsive documents.  Defendants' Memorandum at 6-7.  According to Defendants, should Plaintiffs dispute the adequacy of TSA's response, Plaintiffs should avail themselves of the Department of Homeland Security's administrative appeal process.  *Id.* at 7.  In opposition of Defendants' Motion and in support of Plaintiff's Motion, Plaintiffs maintain TSA has failed to show that its search for the requested materials was adequate, Plaintiffs' Memorandum at 4-5, TSA has not sustained its claim that material redacted from the 11 pages of documentation released by TSA is sensitive security information exempt from disclosure pursuant to 5 U.S.C. § 552(b)(3) ("(b)(3) exemption"), *id.* at 5-6, and TSA's claims of exemption under 5 U.S.C. §§ 552(b)(6) ("(b)(6) exemption"), and 552(b)(7)(C) ("(b)(7)(C) exemption"), are unwarranted.  *Id.* at 9-10.  In reply, Defendants explain that because Plaintiffs did not allege in the Complaint any dissatisfaction with the documents TSA released in response to the TSA FOIA request, but only that TSA had failed to respond more fully to the request, TSA's subsequent disclosure of the 11 pages of documentation has rendered moot the TSA FOIA request.  Defendants' Reply at 2-3.  Defendants further maintain that insofar as Plaintiffs challenge the adequacy of the released documentation, such claim was not set forth in the Complaint and, as such, no relief may be granted as to the non-pleaded claim.  *Id.* at 3-4.  Plaintiffs reply that the Fourth Claim is not moot because TSA's failure to timely act on Pickering's timely-filed

administrative appeal regarding the TSA FOIA request provides Plaintiff with the right to bring the instant action, Plaintiffs' Reply at 3, and TSA's search for records responsive to the TSA FOIA request was inadequate, *id.* at 3-5.

Insofar as TSA has produced records, albeit redacted, responsive to the TSA FOIA request, a plain reading of the Complaint establishes Plaintiffs seek only the production of records responsive to the TSA FOIA request, and do not challenge the adequacy of any response.  Complaint ¶¶ 41-46 (alleging only that despite filing on May 21, 2013, an administrative appeal regarding TSA's failure to respond to the TSA FOIA request, and that more than 20 days since filing such appeal had passed, TSA had failed to notify Plaintiffs whether TSA would respond to the TSA FOIA request, Pickering had exhausted administrative remedies regarding the failure to respond, and asserting Pickering had a right to prompt access to the requested records under 5 U.S.C. § 552(a)(3)(A)).  As such, Plaintiffs' Fourth Claim has been rendered moot.  *See Toolasprashad v. Immigration and Customs Enforcement*, 2013 WL 5488474, at * 5 (W.D.N.Y. Sept. 30, 2013) (holding FOIA claim was moot where record indicated records plaintiff had requested had been produced); *Dixon v. Administrative Appeal Dept. Officer of Information and Privacy*, 2008 WL 216304, at * 4 (S.D.N.Y. 2008) (holding agency's production of documents responsive to FOIA request mooted plaintiff's claim seeking only the disclosure of such materials (citing *Doe v. Gonzales*, 449 F.3d 415, 420 (2d Cir. 2006) (holding claim on appeal became moot based on unilateral action of party who had prevailed in district court)), *aff'd*, 336 Fed.Appx. 98 (2d Cir. July 8, 2009).  Furthermore, when a claim becomes moot, federal courts lose jurisdiction over the action.  *Fox v. Board of Trustees*, 42 F.3d 135, 140 (2d Cir. 1994)

(student plaintiffs' claims challenging under First Amendment regulation barring private commercial businesses from engaging in sales demonstrations in students' dormitory rooms became moot when students graduated and were no longer enrolled at university because plaintiffs no longer had "personal stake" in litigation and thus had no legally cognizable interest).  As with Plaintiffs' EOUSA FOIA request, Discussion, *supra*, at 22, should Plaintiffs desire to challenge the adequacy of the documents provided in response to the TSA FOIA request, Plaintiffs can commence a new FOIA request, and follow all applicable administrative procedures.

Summary judgment on Plaintiffs' Fourth Claim should be GRANTED as to Defendants and DENIED as to Plaintiffs.

## CONCLUSION

Based on the foregoing, Defendants' Motion (Doc. No. 19), should be GRANTED; Plaintiffs' Motion (Doc. No. 29), should be DENIED.  The Clerk of the Court should be directed to close the file.

Respectfully submitted,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      February 25, 2015
            Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an**

**extension of such time waives the right to appeal the District Court's Order.**

*Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiffs and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*
_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:     February 25, 2015
               Buffalo, New York